IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harold Lee Becker,<br><br>    Petitioner,<br><br>vs.<br><br>Dora B. Schriro, et al.,<br><br>    Respondents. | No. CIV 07-0310-PHX-ROS (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

    Harold Lee Becker filed a timely, fully exhausted petition for writ of habeas corpus on February 12, 2007, challenging his convictions in Maricopa County Superior Court for one count each of conspiracy to commit first-degree murder, first-degree murder, and first-degree burglary, and the imposition of concurrent terms of life imprisonment for the conspiracy and murder convictions and 20 years' imprisonment for the burglary conviction. The charges arose out of Becker's actions, along with a former cell-mate and the victim's wife, in planning and carrying out the victim's murder. Becker raises three grounds for habeas relief: 1) ineffective assistance of trial counsel for failure to present alibi witnesses; 2) improper judicial and prosecutorial vouching; and 3) insufficient evidence to support the murder conviction. Respondents contend that all three grounds are without merit. The court agrees and recommends that the petition be denied and dismissed with prejudice.

## BACKGROUND

Police responded to a call about a shooting made from the victim's home by his wife. They found the victim face down on the living room floor with a pillow over his head, and a bullet hole in the back of his head. There was no sign of forced entry. Police escorted the victim's wife to her daughter's house, where an officer overheard her explaining to the daughter that the victim had shot himself. About a month later, police arrested Duane Shuler on an unrelated charge. Shuler indicated that he knew something about a murder that had occurred in Phoenix. Police learned from Shuler that Jason Warwick (Becker's former cellmate) was the shooter. Shuler also told the police that Becker, the victim's wife and Warwick had met at a Motel 6 where Shuler said they planned the murder.

After identifying Becker and the others as being involved, Shuler made a series of recorded telephone calls to Becker, the tape recordings of which were admitted at trial without objection and played before the jury. During these phone calls, Becker made incriminating statements, discussed plans for bailing Warwick out of jail, silencing a potential witness, and locating the lake where the barrel of the gun used to kill the victim had been thrown. When Becker arrived at a Circle K, intending to show Shuler where the gun barrel was located, police arrested him. A search of Becker's truck and motorhome revealed phone bills for a cell phone paid for by Becker and registered to Becker and used by the victim's wife, showing several calls made by her to Becker on the day of the murder, and to the Motel 6 where Shuler had seen Warwick with Becker and the victim's wife.

## DISCUSSION

Becker first argues that trial counsel was ineffective for failing to call alibi witnesses Winofred Lengen and Gary Kuhlman, claiming they were both with him at his house at the time of the murder. Lengen died before trial, and thus would not have been called as a witness. Assuming that his previous testimony could have been admitted, overcoming hearsay objections, the testimony was damaging to Becker. Lengen would have testified that Becker called the victim's wife after the murder, and that Becker was on parole at the time

1 of the murder. Neither statement would be exculpatory. *See Brodit v. Cambra*, 350 F.3d 985, 993-94 (9th Cir. 2003). As for Kuhlman, Becker did not proffer the substance of Kuhlman's testimony by actual testimony of the witness or by affidavit, much less that such testimony would have aided his defense. *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987). *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000). In addition, the testimony was no longer necessary. The prosecutor had told the jury in opening statement that Shuler's mother saw Warwick with a bag that contained two guns, one dismantled, and that she overheard either Warwick or Becker say, "I popped him." The State later decided not to call Shuler's mother as a witness, and therefore trial counsel informed the trial court that there was no need for the defense to call Kuhlman as a rebuttal witness, a reasonable strategic decision. *See Strickland v. Washington*, 466 U.S. 668 (1984).

Becker's next claim pertains to evidence presented to the jury, through the testimony of several witnesses, that the police had conducted certain "tests" on Shuler, the results of which showed an "area of concern" relating to his truthfulness about being present when the gun barrel was thrown in the lake. Becker argues that the trial court's later action, in response to a juror's question during deliberations, in telling the jury of the polygraph tests conducted on Shuler without sharing the results, thereby giving the jury the impression that Shuler had passed, was improper vouching. Respondents correctly point out that it was Becker's counsel who raised the issue several times: first when cross-examining Detective Gregory, again when cross-examining Shuler, and a third time on the last day of trial, when cross-examining Detective Olsen. Respondents also point out that trial counsel's questioning may have benefitted Becker's defense. During cross-examination of Shuler, trial counsel was able to get him to admit that certain things he had told the police were not true.

Later, during deliberations, a juror asked what kind of tests were conducted on Shuler, and the results of those tests. Again, it was trial counsel who had previously argued in favor of letting the jury know the test results because he thought it was exculpatory, tending to show that Shuler was not telling the truth. In addition, he ultimately agreed with the trial

court's decision to answer the juror's question by saying that it was a polygraph test, conducted on a certain date, and that as to the results, to have the jury "rely on your own memory of the evidence presented." A review of the record reveals either that it was invited error, because trial counsel, and not the prosecutor, raised the issue and agreed with the trial court's resolution of the juror's question, or it was sound trial strategy in questioning Shuler's credibility. Either way, it does not establish deficient performance. *Strickland*.

Becker's second claim, that the prosecutor improperly vouched, is based on Becker's allegation that the prosecutor implied in closing argument that there was more evidence than what was presented in court. Becker characterizes this as an inappropriate bolstering of the evidence. A fair reading of the statement - that the State "presented or attempted to present" evidence, is that the prosecutor was being self-deprecating about whether he had been completely clear in his presentation of the evidence. In any event, it was an isolated statement, see *Sassounian v. Roe*, 230 F.3d 1097, 1107 (9th Cir. 2000), and Becker has failed to prove that it had a substantial and injurious effect on the verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

Finally, Becker asserts that there was insufficient evidence to support the verdict, because there was no direct evidence that he was responsible for the murder. The jury was properly instructed that they were not to weigh any differently direct or circumstantial evidence, but to treat them the same. There was ample circumstantial evidence of Becker's involvement in the victim's death, including Shuler's testimony, the tape-recorded telephone calls, and the numerous items found in Becker's truck and motorhome. Viewing the evidence in the light most favorable to the State, any jury could have found Becker guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**IT IS THEREFORE RECOMMENDED** that Harold Lee Becker's petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE** (Doc. #1).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

1  Appellate Procedure, should not be filed until entry of the district court's judgment. The
2  parties shall have ten days from the date of service of a copy of this recommendation within
3  which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules
4  72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within
5  which to file a response to the objections. Failure timely to file objections to the Magistrate
6  Judge's Report and Recommendation may result in the acceptance of the Report and
7  Recommendation by the district court without further review. *See United States v. Reyna-*
8  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual
9  determinations of the Magistrate Judge will be considered a waiver of a party's right to
10 appellate review of the findings of fact in an order or judgment entered pursuant to the
11 Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 14th day of February, 2008.

David K. Duncan
United States Magistrate Judge